# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA,
# CHARLESTON DIVISION

BUILDERS MUTUAL                          )
INSURANCE COMPANY,                       )          C/A No.:  2:10-cv-_563_-_CWH_
                                         )
              Plaintiff,                 )
                                         )
vs.                                      )          **COMPLAINT**
                                         )          (*Declaratory Judgment*)
SOUTHERN STRUCTURES ICF                  )          (*Insurance Contract*)
BUILDERS, LLC. d/b/a SOUTHERN            )          (*Non-Jury Trial*
STRUCTURES OF MOUNT                      )          *Demanded)*
PLEASANT, INC.; SOUTHERN                 )
STRUCTURES, INC. d/b/a                   )
SOUTHERN STRUCTURES OF                   )
MOUNT PLEASANT, INC.;                    )
BENJAMIN L. DANIEL, II,                  )
Individually; JAMES M. LOFTIS, SR.;      )
ROXANA T. LOFTIS; CENTRAL                )
INSURANCE COMPANY d/b/a                  )
CENTRAL MUTUAL INSURANCE                 )
COMPANY; USF INSURANCE                   )
COMPANY; and CERTAIN                     )
UNDERWRITERS AT LLOYDS                   )
OF LONDON a/k/a LLOYD'S                  )
AMERICA, INC.,                           )
,                                        )
              Defendants.                )
_____)

TO:  THE DEFENDANTS, SOUTHERN STRUCTURES ICF BUILDERS,
     LLC. d/b/a SOUTHERN STRUCTURES OF MOUNT PLEASANT,
     INC.; SOUTHERN STRUCTURES, INC. d/b/a SOUTHERN
     STRUCTURES OF MOUNT PLEASANT, INC.; BENJAMIN L.
     DANIEL, II, Individually; JAMES M. LOFTIS, SR.; ROXANA T.
     LOFTIS; CENTRAL INSURANCE COMPANY d/b/a CENTRAL

MUTUAL INSURANCE COMPANY; USF INSURANCE COMPANY; and CERTAIN UNDERWRITERS AT LLOYDS OF LONDON a/k/a LLOYD'S AMERICA, INC., NAMED HEREINABOVE:

The Plaintiff, Builders Mutual Insurance Company, complaining of the Defendants, Southern Structures ICF Builders, LLC. d/b/a Southern Structures of Mount Pleasant Inc.; Southern Structures, Inc. d/b/a Southern Structures of Mount Pleasant, Inc.; Benjamin L. Daniel, II, Individually; James M. Loftis, Sr.; Roxanna T. Loftis; Central Insurance USF, Inc., and Certain Underwrites at Lloyds of London a/k/a Lloyd's America, Inc., respectfully shows unto this District Court as follows:

## PARTY AND JURISDICTIONAL ALLEGATIONS

1.    The Plaintiff, Builders Mutual Insurance Company ("Builders Mutual"), is a corporation organized and existing under the laws of a state other than the State of South Carolina, namely the State of North Carolina, with its principal place of business located in Raleigh, North Carolina; however conducts the business of selling and providing insurance to insureds in South Carolina, in Charleston County, and in the Town of Mount Pleasant under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

2.    The Defendant, Benjamin L. Daniel, II ("Mr. Daniel"), is, upon information and belief, a resident and citizen of Charleston County, South Carolina and is the owner and president of the Defendant, Southern Structures ICF Builders, LLC. d/b/a Southern Structures of Mount Pleasant, Inc. and, in turn, is included herein as a party-defendant in that he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his successors, and his assigns. (*Mr. Daniel, Southern Structures and Southern Structures, Inc. will hereinafter collectively be referred to herein as "Southern Structures"*).

3.    The Defendant, Southern Structures ICF Builders, LLC. d/b/a Southern Structures of Mount Pleasant, Inc. ("Southern Structures Mount Pleasant") is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Charleston County, South Carolina and which does business in, among other places, the Town of Mount Pleasant, Charleston County, South Carolina.    (*Mr. Daniel, Southern Structures and Southern Structures, Inc. will hereinafter collectively be referred to herein as "Southern Structures"*).

4.    The Defendant, Southern Structures, Inc. d/b/a Southern Structures of Mount Pleasant, Inc. ("Southern Structures") is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Charleston County, South Carolina and which does business in, among other places, the Town of Mount Pleasant, Charleston County, South Carolina. (*Mr. Daniel, Southern Structures and Southern will hereinafter collectively be referred to herein as "Southern Structures"*).

5.    The Defendants, James M. Loftis, Sr. and Roxana T. Loftis ("Mr. and Mrs. Loftis"), are upon information and belief, residents and citizens of the Town of Mount Pleasant, Charleston County, South Carolina and are included herein as party-defendants in that they have a significant interest in the outcome of this litigation and any decision rendered herein should be binding on them, their successors, and their assigns.

6.    The Defendant, Central Insurance Company d/b/a Central Mutual Insurance Company ("Central Mutual"), is a corporation organized and existing under the laws of a state other than the State of South Carolina, namely the State of Ohio, with its principal place of business located in Van Wert, Ohio; however conducts the business of selling and

providing insurance to insureds in South Carolina, in Charleston County, and in the Town of Mount Pleasant under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

7.     The Defendant, USF Insurance Company ("USF Insurance"), is a corporation organized and existing under the laws of a state other than the State of South Carolina, namely the State of Michigan, with its principal place of business located in Farmington Hill, Michigan; however conducts the business of selling and providing insurance to insureds in South Carolina, in Charleston County, and in the Town of Mount Pleasant under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

8.     The Defendant, Certain Underwriters at Lloyd's of London a/k/a Lloyd's America, Inc. ("Lloyds London"), is, upon information and belief, is an international insurance syndicate organized and existing under the laws of a country other than the United States or of the State of South Carolina, namely the United Kingdom, with its principal place of business located in London, England; however conducts the business of selling and providing insurance to insureds in the United States, in South Carolina, in Charleston

County, and in the Town of Mount Pleasant under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

9.     This is a declaratory judgment action brought pursuant to Rule 57 of the *Federal Rules of Civil Procedure* and 28 *U.S.C.* §§ 2201-2202 (West Group 1993 and West Group Supp. 2005).

10.     The jurisdiction of this District Court is based upon the diversity of citizenship of the parties pursuant to 28 *U.S.C.* § 1332(a) (West Group 2005).

11.     The amount in controversy herein exceeds the sum of $75,000.00 exclusive of interest and costs.

12.     All matters and allegations herein contained are within the subject matter and personal jurisdiction of this District Court and venue is proper in this District Court and in the particular Division selected herein since the incidents giving rise to this action occurred in Charleston County, South Carolina.

## FACTUAL ALLEGATIONS
(*The Insurance Policy*)

13.    Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

14.    On or about 4 March 2002, Builders Mutual issued a commercial general liability insurance policy (the "CGL Policy"), pursuant to Policy No. CPP 0014232 01, to Southern Structures, Inc. with a policy effective period running from 10 January 2004, until 10 January 2005, and, if applicable, as may have been renewed annually thereafter until such was cancelled, lapsed, or non-renewed.  (*A copy of the CGL Policy is attached hereto as **Exhibit "A"** and incorporated herein by reference.*).

15.    The CGL Policy insured Southern Structures for certain liability risks under the insuring agreement and, in turn, excluded certain liability risks pursuant to and through various policy exclusions.  All of the terms, conditions, obligations, and duties under and pursuant to the CGL Policy are incorporated herein by reference.

16.    The CGL Policy does not include or constitute a performance bond covering work performed by Southern Structures and/or any other insured performing operations or activities for or on behalf of Southern Structures.

17.    The CGL Policy provided, in pertinent part, in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, through **SECTION I – COVERAGES**, pursuant to **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, via Paragraph **1.** entitled **Insuring Agreement**, as follows:

> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> **b.**    This insurance applies to "bodily injury" or "property damage only if:
>
> > **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.   If such a listed insured or authorized "employee" knew, prior to the policy period, the "bodily injury" or "property damage" occurred, then any continuation, change[,] or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c**.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change[,] or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when an insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means the "bodily injury" or "property damage" has occurred or has begun to occur.

18.    The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to the same section, through Paragraph **2.** entitled **Exclusions**, as follows:

This insurance does not apply to:

### a.    Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

### b.    Contractual Liability

"Bodily injury" or "property damage" liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:

**(1)**    That the insured would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than the insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**    Liability to such party, or for the cost of, the party's defense has also been assumed in the same "insured contract"; and

**(b)**    Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

**j.**    **Damage To Property**

"Property damage" to:

* * *

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired[,] or replaced because "your work" was incorrectly performed on it.

* * *

Paragraphs . . . **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.**    **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not already been physically injured, arising out of

**(1)**    a defect, deficiency, inadequacy[,] or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work[,] Or Impaired Property**

Damages claimed for any loss, cost[,] or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal[,] or disposal of:

**(1)**    "Your product";

**(2)**    "Your work; or

> **(3)** "Impaired property";
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy[,] or dangerous condition in it.

19. The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to **SECTION II – WHO IS AN INSURED**, as follows:

> **1.** If you are designated in the Declarations as:
>
> **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>
> * * *
>
> **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> **2.** Each of the following is also an insured:
>
> **a.** Your . . . "employees", other than . . . your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

20. The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to **SECTION V - DEFINITIONS**, as follows:

> **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> > **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate[,] or dangerous;
> >
> > **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> > **a.** The repair, replacement, adjustment[,] or removal of "your product" or "your work"; or
> >
> > **b.** Your fulfilling the terms of the contract or agreement.
>
> **9.** "Insured contract" means:
>
> > \* \* \*
> >
> > **f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.
>
> \* \* \*
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions;
>
> \* \* \*

**16.**   "Products-completed operations hazard":

**a.**   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**   Products that are still in your physical possession; or

**(2)**   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)**   When all of the work called for in your contract has been completed.

**(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one site.

**(c)**   When that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service maintenance, correction, repair[,] or replacement, but which is otherwise complete, will be treated as completed.

* * *

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" [which] caused it.

* * *

21. "Your product"

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed[,] or disposed of by:

         (a) You;

* * *

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

* * *

22. "Your work"

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

**(2)** Materials, parts[,] or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your work; and

**(2)** The providing of or failure to provide warnings or instructions.

21.  The CGL Policy Policies provided, in pertinent part, in the endorsement entitled **EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS**, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work".

This insurance applies to "your work" described in Paragraph 1. and 2. below performed by you [the named insured] or on your [the named insured's] behalf.

**1.** The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any Direct-applied Exterior Finish System (commonly referred to as

DEFS), or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.

**2.** Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system is used on any part of that structure.

22. The CGL Policy provided, in pertinent part, in the **FUNGUS, MOLD, AND MILDEW EXCLUSION**, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This exclusion is added under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, under Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**, and under Paragraph **2.**, **Exclusions** of **Section I – Coverage C – Medical Payments**.

This insurance does not apply to:

**Fungus", Mold[,] and Mildew**

**(1)** "Bodily injury", "property damage", "personal or advertising injury"[,] or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens;

**(2)** Any sums that "you" become legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens at any time;

**(3)** Any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that "you" or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality;

**(3)** Any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that "you" or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality;

**(4)** Any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens.

These definitions are added to **Section V – Definitions**

"Fungus" means any of the plant-like group of organisms that does not contain chlorophyll; they derive their food either by decomposing organic matter from dead plants and animals, or by parasitic attachment to living organisms, thus causing infections and disease. The word "fungus" includes molds, mildews, musts[,] and the rusts and smuts that infect grain and other plants.

"Fungus" does not include mushrooms, a product of agriculture for human consumption.

"Mycotoxin" means a highly toxic principle produced by molds or fungi.

23.    The CGL Policy provided, in pertinent part, in the endorsement entitled **EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**, as follows:

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2.    **Exclusions**

This insurance does not apply to:

l.    **Damage To Your Work**

"Property damage" to "your work" arising out of or any part of it and included in the :products-completed operations hazard".

## FACTUAL ALLEGATIONS
*(The Defective And/Or Faulty Construction)*

24.    Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

25.    Upon information and belief, sometime on or about 2 December 2003, Southern Structures, Mr. Daniel, and Mr. and Mrs. Loftis entered into a construction contract (the "Construction Contract") through which Southern Structures was to build a single family residence for Mr. and Mrs. Loftis to be located at 201 North Shelmore Drive, I'On Subdivision, Mount Pleasant, South Carolina (the "Loftis Residence").

26.    Upon information and belief, on or about 2 December 2003, Southern Structures obtained a building permit from the Town of Mount Pleasant and began construction on the Loftis Residence.

27.    Prior to and during construction of the Loftis Residence, Southern Structures retained several subcontractors to undertake the actual construction of the Loftis Residence, including, but not limited to Eco Block, LLC, Salvatore Morales, Individually, Coastal Stucco, Inc., Scott Corocoran d/b/a Corcoran Caulking and Waterproofing, Engineered Concrete Products, Inc., A Delaware Corporation, Taylor-Made

Construction & Development, LLC, New Homes Construction, LLC, South East Roof Contracting, LLC, I'On Realty Company, LLC, The I'On Company, LLC, Brittingham Mechanical, LLC, Patrick H. Brittingham, Individually, and Leboeuf Architectural Woodwork, Inc.

28.    Upon information and belief, sometime on or about 13 May 2005, Southern Structures obtained a Certificate of Occupancy from the Town of Mount Pleasant and, thereafter, turned the Loftis Residence over to Mr. and Mrs. Loftis to occupy.

29.    Upon information and belief, after Mr. and Mrs. Loftis took possession of the Loftis Residence and began to live there, they began to notice various construction defects and poor workmanship in their home and noticed evidence of faulty workmanship and defective construction.

30.    As a result of the construction defects/faulty workmanship problems, upon information and belief, Mr. and Mrs. Loftis complained to Southern Structures asserting the Loftis Residence contained various construction defects and poor workmanship resulting from serious water intrusion.

31.    Upon information and belief, Mr. and Mrs. Loftis reported the faulty workmanship and construction defect problems to, among others, Southern Structures which, in turn, disclaimed all responsibility for the alleged problems and/or failed to make appropriate and necessary remediation and/or repairs.

32.    Upon information and belief, Southern Structures, in turn, reported the faulty workmanship and construction defect problems to its various subcontractors, which, in turn, either disclaimed all responsibility for the alleged problems and/or failed to make appropriate and necessary remediation and/or repairs.

33.    As a result of various construction defects found in the Loftis Residence, Mr. and Mrs. Loftis brought an civil suit against Mr. Daniel and Southern Structures in the Charleston County Court of Common Pleas in an action entitled *James M. Loftis, Sr., and Roxana T. Loftis, v. Southern Structures ICF Builders, LLC, Southern Structures ICF Builders, LLC, Benjamin L. Daniel, II, Individually, Eco-Block, LLC, Southern Structures, Inc., Salvatore Morales, Individually, Coastal Stucco, Inc., Scott Corocoran d/b/a Corcoran Caulking and Waterproofing, Engineered Concrete Products, Inc., A Delaware Corporation, Taylor-Made Construction & Development, LLC, New Homes Construction, LLC, South East Roof*

*Contracting, LLC, I'On Realty Company, LLC, The I'On Company, LLC, Brittingham Mechanical, LLC, Patrick H. Brittingham, Individually, and Leboeuf Architectural Woodwork, Inc.*, Charleston County Court of Common Pleas, Civil Action No. 2007-CP-10-2063, filed 1 April 2008 (the "Underlying Action") (*Copies of the Complaint, Amended Complaint, and Second Amended Complaint in the Underlying Action are collectively attached hereto as **Exhibit "B"** and incorporated herein by reference*).

34.     The Complaint in the Underlying Action asserted claims against Southern Structures for (a) negligence (*UA Complaint*, paras. 37-39 and all subparts therein), (b) breach of the warranties of habitability, against latent defects, workmanlike services, fitness for a particular purpose, and merchantability/service ability (*UA Complaint*, paras. 50-53); and (c) violations of the *South Carolina Unfair Trade Practices Act* as set forth in *S.C. Code Ann.* § 39-5-10, *et seq.* (Law. Co-op 1985 and West Group 2004). (*UA Complaint*, paras. 54-61).

35.     The Complaint in the Underlying Action alleged that, as a result of Southern Structures' faulty workmanship and defective construction at the Loftis Residence, Mr. and Mrs. Loftis have been significantly damaged due to, among other things, numerous construction defects and faulty

workmanship which need to be replaced, repaired, and/or corrected, the diminished value of the Loftis Residence, and the significantly increased maintenance and reconstruction costs.

36.    Mr. and Mrs. Loftis sought unspecified actual, punitive, and treble damages against Southern Structures, together with attorneys' fees, litigation costs, pre-judgment interest, and post-judgment interest.

37.    Mr. and Mrs. Loftis alleged examples of Southern Structures' faulty workmanship and defective construction included, but were not limited to, the following:

(a)    improper supervision of subcontractors;

(b)    hiring of incompetent subcontractors;

(c)    improper and faulty installation of exterior doors, exterior trim, and/or porches and decks such that moisture was allowed into the home;

(d)    improper and/or incorrectly installed framing;

(e)    improper and faulty installation of windows and doors; and

(f)    lack of sealant joints and/or improperly installed sealant joints.

38.    Mr. and Mrs. Loftis have subsequently filed an Amended Complaint and a Second Amended Complaint.  (*Copies of the original Complaint and the two Amended Complaints are collectively attached hereto as* **_Exhibit "B"_** *and incorporated herein by reference*).

39.    Builders Mutual, upon information and belief, in conjunction with one or more of the other named carriers, has been providing and continues to provide Southern Structures with a legal defense in the Underlying Litigation pursuant to a full reservation of rights and notice of non-waiver.

40.    Central Mutual, upon information and belief, provided commercial general liability insurance coverage to Southern Structures under the same or similar terms and conditions as did Builders Mutual.

41.    Central Mutual, upon information and belief, provided commercial general liability insurance coverage to Southern Structures for a policy period encompassed within the time frame relative to the construction and occupancy of the Loftis Residence and, therefore, has a significant interest in any insurance coverage declaration issued by the District Court herein.

42.    USF Insurance, upon information and belief, provided commercial general liability insurance coverage to Southern Structures under the same or similar terms and conditions as did Builders Mutual.

43.    USF Insurance, upon information and belief, provided commercial general liability insurance coverage to Southern Structures for a policy period encompassed within the time frame relative to the

construction and occupancy of the Loftis Residence and, therefore, has a significant interest in any insurance coverage declaration issued by the District Court herein.

44. Lloyd's London, upon information and belief, provided commercial general liability insurance coverage to Southern Structures under the same or similar terms and conditions as did Builders Mutual.

45. Lloyd's London, upon information and belief, provided commercial general liability insurance coverage to Southern Structures for a policy period encompassed within the time frame relative to the construction and occupancy of the Loftis Residence and, therefore, has a significant interest in any insurance coverage declaration issued by the District Court herein.

46. Lloyd's London, upon information and belief, has heretofore refused to participate in the provision of a legal defense to Southern Structures and has, upon information and belief, denied coverage to Southern Structures for Mr. and Mrs. Loftis' claims.

## FIRST CAUSE OF ACTION
*(Declaratory Judgment – Insurance Policy)*

47.     Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

48.     The CGL Policy does not provide liability insurance coverage for "property damage" expected or intended from the standpoint of any insured.

49.     The CGL Policy does not provide liability insurance coverage for "property damage" known by any insured and/or an appropriately designated employee to have existed prior to the commencement of the applicable policy period for the CGL Policy.

50.     The CGL Policy does not provide liability insurance coverage for any "breach of contract" by any insured.

51.     The CGL Policy covers "property damage" only when and if such "property damage" is caused by an "occurrence" as that term is defined in the CGL Policy.

52.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your work" regarding that particular part of any property which must be restored, repaired, and/or replaced because "your work" was incorrectly performed on it.

53.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your product" arising out of it or any part of it.

54.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

55.    The CGL Policy defines the term "your work" to constitute work or operations performed by Southern Structures or by some third-party on behalf of Southern Structures and specifically includes material, parts, and/or equipment furnished by Southern Structures or by some third-party on behalf of Southern Structures in connection with Southern Structures' work or operations and/or the third-party's work or operations on behalf of Southern Structures.

56.    The Loftis Residence constituted the "your work" of Southern Structures as that phrase was defined in the CGL Policy.

57.    The CGL Policy defines the term "your product" to constitute any goods or products manufactured, sold, handled, distributed, and/or disposed of by Southern Structures, including any containers, materials, parts, and/or equipment furnished in connection with such goods and/or products.

58.    The Loftis Residence constituted the "your product" of Southern Structures as that phrase was defined in the CGL Policy.

59.    The CGL Policy specifically excludes liability coverage for, *inter alia*, "property damage" to "impaired property" arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work" or a delay or failure by Southern Structures and/or anyone acting on Southern Structure's behalf to perform a contract or agreement in accordance with its terms.

60.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, any sums which Southern Structures become legally obligated to pay as damages because of the:

> The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any Direct-applied Exterior Finish System (commonly referred to as

> DEFS), or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.

61.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, any sums that Southern Structures become legally obligated to pay as damages because of:

> Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system is used on any part of that structure.

62.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, any sums that Southern Structures becomes legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens at any time".

63.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, "bodily injury" and/or "property damage" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens.

64.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that either Southern Structures or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality.

65.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens.

66.    The CGL Policy specifically excludes liability coverage to Southern Structures for, *inter alia*, " '[p]roperty damage" to "your work" arising out of or any part of it and included in the :products-completed operations hazard.' "

67.    The CGL Policy specifically excludes liability coverage to Southern Structures for any work done on behalf of southern Structures by one or more of Southern Structures' subcontractors.

68.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and defective construction performed by Southern Structures and/or on behalf of Southern Structures by one or more subcontractors and/or sub-subcontractors at the Loftis Residence does not constitute an "occurrence" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law.

69.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf Southern Structures at the Loftis Residence does not constitute "property damage" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law.

70.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of Southern Structures at the Loftis Residence, even if it did constitute an "occurrence" under the CGL Policy, does not constitute "property damage" as that term is defined in the CGL Policy.

71.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of Southern Structures at the Loftis Residence, even if it did constitute an "occurrence" under the CGL Policy and even if it did constitute "property damage" as that term is defined in the CGL Policy, that such damage was still excluded from coverage since it was "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" as those terms are defined by the CGL Policy.

72.    Builders Mutual is entitled to a declaration by this District Court that the CGL Policy, pursuant to the endorsement entitled ***Exclusion – Damage To Work Performed By Subcontractors On Your Behalf***, completely eliminated any and all liability insurance coverage for any and all subcontractors contracted by Southern Structures to provide materials, goods, and/or perform services and/or work on the Loftis Residence.

73.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Fungus, Mold[,] and Mildew Exclusion***, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

74.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Exclusion – Exterior Insulation And Finish Systems***, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

75.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Contractual Liability*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

76.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Expected Or Intended Injury*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

77.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Property*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

78.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Your Product*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

79.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Your Work*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

80.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Impaired Property Or Property Not Physically Injured*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

81.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Recall Of Products, Work, Or Impaired Property*** exclusion, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense and/or indemnification for the claims asserted by Mr. and Mrs. Loftis in the Underlying Action.

82.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all applicable exclusions, do not obligate Builders Mutual to provide Southern Structures or any other insured any insurance coverage regarding the claims of property damage set forth by Mr. and Mrs. Loftis in the Underlying Action.

83.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide Southern Structures or any other insured with a legal defense to Mr. and Mrs. Loftis' claims in the Underlying Action.

84.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide Southern Structures or any other insured indemnification for Mr. and Mrs. Loftis' claims in the Underlying Action.

WHEREFORE, the Plaintiff, Builders Mutual Insurance Company, having fully complained against the Defendants, Southern Structures ICF Builders, LLC. d/b/a Southern Structures of Mount Pleasant Inc.; Southern Structures, Inc. d/b/a Southern Structures of Mount Pleasant, Inc.; Benjamin L. Daniel, II, Individually; James M. Loftis, Sr.; Roxanna T. Loftis;

Central Insurance Company d/b/a Central Mutual Insurance Company;

USF Insurance Company; and Certain Underwriters at Lloyds of London

a/k/a Lloyd's America, Inc., respectfully requests this District Court to:

a. Declare that the faulty workmanship and construction defects claims asserted by Mr. and Mrs. Loftis against Southern Structures in the Underlying Action and arising out of and/or related to the construction of the Loftis Residence do not constitute "property damage" as defined by the CGL Policy and the applicable law;

b. Declare that the faulty workmanship and construction defects claims asserted by Mr. and Mrs. Loftis against Southern Structures and/or Mr. Daniel or any other insured in the Underlying Action and arising out of and/or related to the construction of the Loftis Residence do not constitute an "occurrence" as defined by the CGL Policy and the applicable law;

c. Declare that the faulty workmanship and construction defects claims asserted by Mr. and Mrs. Loftis against Southern Structures and/or Mr. Kalman or any other insured in the Underlying Action and arising out of and/or related to the construction of the Loftis Residence are excluded by one or more sections of Exclusions "*a*", "*j*", "*k*", "*l*", "*m*" and/or "*n*" of the CGL Policy;

d. Declare that the CGL Policy issued by Builders Mutual Insurance Company covering Southern Structures and/or Mr. Daniel or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage

to Southern Structures and/or Mr. Daniel or any other insured for the faulty workmanship and construction defects claims asserted against Southern Structures by Mr. and Mrs. Loftis in the Underlying Action and arising out of construction of the Loftis Residence;

e.    Declare that the CGL Policy, particularly the **Fungus, Mold[,] and Mildew Exclusion**, and others specifically named herein, issued by Builders Mutual Insurance Company covering Southern Structures and/or Mr. Daniel or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to Southern Structures and/or Mr. Daniel or any other insured for the faulty workmanship and construction defects claims asserted against Southern Structures and/or Mr. Daniel or any other insured by Mr. and Mrs. Loftis in the Underlying Action and arising out of construction of the Loftis Residence;

f.    Declare that the CGL Policy, particularly the **Exclusion – Damage To Work Performed By Subcontractors On Your Behalf**, and others specifically named herein, issued by Builders Mutual Insurance Company covering Southern Structures and/or Mr. Daniel or any other insured does not require Builders Mutual Insurance Company to provide liability insurance coverage to Southern Structures and/or Mr. Daniel or any other insured for the faulty workmanship and construction defects claims asserted against Southern Structures and/or Mr. Daniel or any other insured by Mr. and Mrs. Loftis in the Underlying Action and arising out of construction of the Loftis Residence;

g.  Declare that the CGL Policy issued by Builders Mutual Insurance Company covering Southern Structures and/or Mr. Daniel or any other insured does not require Builders Mutual Insurance Company to provide a legal defense to Southern Structures and/or Mr. Daniel or any other insured for the faulty workmanship and construction defects claims asserted against Southern Structures and/or Mr. Daniel or any other insured by Mr. and Mrs. Loftis in the Underlying Action and arising out of construction of the Loftis Residence;

h.  Declare that the CGL Policy issued by Builders Mutual Insurance Company covering Southern Structures and/or Mr. Daniel or any other insured does not require Builders Mutual Insurance Company to provide indemnification to Southern Structures and/or Mr. Daniel or any other insured for the faulty workmanship and construction defects claims asserted against Southern Structures and/or Mr. Daniel or any other insured by Mr. and Mrs. Loftis in the Underlying Action and arising out of construction of the Loftis Residence;

i.  For the costs and disbursements of this action; and

j.  For such other relief as this District Court deems just and proper under the circumstances.

Respectfully submitted:

*NEXSEN PRUET, LLC*

By:    **s/Stephen P. Groves, Sr.**

Stephen P. Groves, Sr., Esquire
Federal I.D. No.   2490
205 King Street, Suite 400
Charleston, South Carolina  29401
Telephone:       843.720.1725
Telecopier:      843.720.1777
E-Mail:          SGroves@nexsenpruet.com

*Attorneys for the Plaintiff,*
     *Builders Mutual Insurance Company*

Charleston, South Carolina

8 March 2010

NPCHAR1:555101.1-PG-(SPG) 032595-00097